**EASTMAN KODAK CO., Plaintiff,**

v.

**FOTOMAT CORPORATION, Defendant.**

Civ. A. No. 12455.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 31, 1969.

Order Amending Decision
March 26, 1970.

Orders for Temporary Injunction
March 27, 1970.

Supplemental Order Sept. 23, 1970.

Alston, Miller & Gaines, Atlanta, Ga., for plaintiff.

Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for defendant.

## STATEMENT OF THE CASE

HOOPER, Senior District Judge.

Plaintiff Eastman Kodak Co. brought this action seeking an injunction against defendant Fotomat Corporation based upon the allegation of unfair competition, alleging that the defendant in connection with a large number of kiosks (also referred to as Fotomats drive-thrus or huts) was infringing upon Plaintiff's trademark and trade dress and misleading the public into the belief that these kiosks were operated by the plaintiff and that plaintiff was the party developing the films left by customers for processing.

The defendant, after a denial of plaintiff's claims, by way of cross-bill made allegations as to practices of the plaintiff which defendant contended misled the public and caused danger of loss to the defendant. Contentions of the parties as taken from the pleadings and other sources are specifically set forth below.

This matter came before the Court for a hearing on the prayers of each party for a temporary injunction. The Court passed an order seeking to define the range and the quantity of evidence necessary for a decision of that issue.[1] However, it appeared clearly to the Court that each party desired practically a full and complete hearing on all of the issues involved. The Court thereupon (while not agreeing to such a plenary hearing and while seeking to confine the evidence within the range aforesaid) entered an order consolidating the hearing for temporary injunction with the subsequent hearing to be had on prayers for permanent injunction pursuant to Rule 65, Federal Rules of Civil Procedure.

Suggestion by the Court that this hearing be full and complete and that at the conclusion a final judgment should be rendered rather than temporary injunctions only, did not meet with the approval of the parties who sought early decision on the prayers for temporary injunction, but such early decision has been found impossible because of the complexity of the issues involved and the extensive testimony, including a large number of exhibits adduced at the hearing.

The Court wishes to make it clear that the rulings made and the judgment rendered herein and the discussions of the facts involved shall have no more force and effect than customarily given in connection with hearings for temporary injunction. However, at the suggestion of the Court each party filed a motion for summary judgment and the Court held a brief and incomplete hearing by way of pretrial, and the rulings made herein and the evidence in this record will be considered by this Court in connection with partial summary judgment and subsequent pretrial looking toward a decision on the prayers for permanent in-

---

1. See Order of Court on Pretrial and Motions for Summary Judgment dated the 12th day of September, 1969.

junction and will shorten that hearing considerably.

From the inception of this matter and beginning at the first hearing, both parties with the assistance of the Court attempted to arrive at the enumeration of changes to be effectuated by both defendant and plaintiff which would serve the basis for temporary injunctions, with the distinct understanding that this would [will] be done without prejudice to the rights of the parties on the hearing for permanent injunction. By consent of both parties the Court at one stage of the hearings turned to the consideration by the Court of changes which in the opinion of the Court would satisfy the demands of each party by the removal of confusion in the minds of the public ad reference thereto will hereinafter be made.[2]

## CONTENTIONS OF THE PLAINTIFF

(a) Plaintiff alleges that defendant is guilty of common law unfair competition;

(b) Plaintiff alleges that defendant is guilty of unfair competition under the federal law, 15 U.S.C.A., § 1125(a) in that defendant has appropriated the design and overall appearance from plaintiff's trade dress;

(c) Plaintiff alleges that defendant is guilty of deceptive trade practices under the Georgia law, in that defendant's practices will cause a likelihood of confusion;

(d) Plaintiff alleges that defendant's acts and practices are likely to injure plaintiff's business reputation and dilute the distinctiveness of plaintiff's trademark, trade name and trade dress in violation of the Georgia law.

(e) Plaintiff alleges that defendant has infringed plaintiff's trademark and service marks and has misappropriated and used these marks with the sale of products and processes other than plaintiff's. Plaintiff further alleges that defendant infringed with the intent to infringe, and without license from or consent from plaintiff.

## PLAINTIFF'S CONTENTIONS— TRADE DRESS

Plaintiff lays great stress on the contention that defendant is violating plaintiff's "trade dress". This is defined by plaintiff's counsel (Tr. 1225) as "a predominantly yellow background with red or black, sometimes accompanied by accent colors in conjunction with one or more KODAK trade marks".

Plaintiff's registered trademark consisting of the word "KODAK" makes no reference to colors to be used in connection therewith, but plaintiff contends that for a period of sixty (60) years or more it has used said trademark in connection with the yellow background with red or black colors in connection therewith.[3] On the trial of the case plaintiff at times made claim to the exclusive use of yellow in connection with photographic supplies and processing, but in many instances defined its alleged "trade dress" as including its trademark "KODAK". Plaintiff also during the trial explained its efforts during recent years to induce all of its dealers to use a yellow background only on portions of its buildings which have reference to Kodak films and supplies, and not on portions of the buildings which identify the name of the owner or operator, and the evidence shows many dealers have already complied with plaintiff's request in that regard.

Specific questions raised by plaintiff are hereinafter discussed.

---

2. Plaintiff's prayers for injunction are quite general in terms and all efforts by the Court to obtain specific steps to be required of defendant have not met with success until the hearing was practically ended.

3. Plaintiff does not contend, however, and its exhibits do not show that it has ever used specific percentages of yellow, red and/or black or that it has ever massed these colors in a consistent combination.

## THE COMPLAINT

Plaintiff for over fifty years has used "a trade dress consisting of a predominantly yellow background used in connection with the colors red or black, or both together, with the plaintiff's trademarks and service marks all in a distinctive style of printing long associated with plaintiff." Plaintiff alleges that defendant "is now using in commerce in the operation and design of its Fotomats a trade dress and style which are deceptively and confusingly similar to plaintiffs, including a yellow roof with plaintiff's mark and trade name "KODAK" appearing in a dominant position thereon in red letters in plaintiff's distinctive style of printing."

Plaintiff then makes the following allegation which seems to be of primary importance in this case, to-wit: "Plaintiff claims that defendant has failed adequately to identify itself on these Fotomats and that this, together with the unlawful appropriation and use, has resulted in widespread and unparalleled public confusion, both confusion as to the ownership and/or sponsorship of defendant's Fotomats, and confusion as to the source of origin of the products and processing services being merchandised through such Fotomats." The following allegation by plaintiff is significant, to-wit: "The public has been led and is being led to believe that defendant's Fotomats are plaintiff's and that plaintiff's processing services are being offered at such Fotomats when such is not the case."

## PLAINTIFF'S CLAIM TO EXCLUSIVE RIGHT TO USE OF YELLOW COLOR

Plaintiff makes the contention that it has the absolute exclusive right to use of the color yellow in connection with

photographic material and services.[4] In its brief filed September 12, 1969 (captioned Eastman Kodak Company's Rights to the Color Yellow) the opening paragraph is in part as follows:

"Eastman Kodak Company alleges a property right to its very valuable trade dress consisting of a *predominantly yellow background,* in combination with red or black, or both, used in the photographic industry in conjunction with its various trademarks and service marks lettered in a distinct style of printing." (Italics supplied)

■ Subsequently the brief refers to the "misuse by Fotomat Corporation of the color yellow which the public has identified as the *predominant feature of Eastman Kodak Company's trade dress.*" While recognizing "that under ordinary circumstances a manufacturer may not claim particular rights in a color" (citing Campbell Soup Company v. Armour and Company, 3 Cir., 175 F.2d 795), counsel cited an alleged leading case which used the following language:

"While it is true no one has the right to monopolize a particular color, yet the courts have repeatedly held that a person may be restrained from using a particular color, *in combination with other things, to mislead the public* and market his goods as those of another." Ohio Baking Co. v. National Biscuit Co., 127 F. 116, 121 (6th Cir. 1904) cert. den. 195 U.S. 630, 25 S.Ct. 788, 49 L.Ed. 352 (1904).

Other cases refer to the function of color as being "an extensive element of deceit." Counsel also cited Barbasol Co. v. Jacobs, 160 F.2d 336 (7th Cir.) referring not only to a combination of colors but stating "the unique packaging design of the plaintiff distinguished its prod-

---

4. On the trial the following colloquy occurred:

The Court: "Do you think that the use by a competitor, per se, of yellow alone or of yellow and red alone without the word Kodak there is an infringement of the plaintiff's rights?"

Mr. Hoffberg: "If your Honor please, in this case we would have to say yes, in this case, and we've handed up a memorandum of law outlining why we think that."

ucts from others and accordingly injunctive relief was granted."

Under the pleadings and the evidence in this case the issue is not specifically raised as to whether or not defendant's use of a yellow roof is a violation of plaintiff's trade dress.[5] Under the above authorities, however, this Court would be required to rule that a yellow color would be enjoined only when it, in combination with other things, tended to mislead the public, and that is exactly the thing for which plaintiff has been contending under its definition of plaintiff's "trade dress".

## PLAINTIFF'S PROOF OF PROBABLE CONFUSION

■ It has frequently been ruled by the courts "that proof of actual confusion is not required since under the terms of the Lanham Act likelihood of confusion is the appropriate test." Frostie Company v. Dr. Pepper Company, 341 F.2d 363, 366 (5 Cir.) and cases cited. It is also the law that "in determining whether there was likelihood of confusion * * a mere ocular examination of the two marks might permit the trial court to make its conclusion." Frostie Company v. Dr. Pepper Company, 341 F.2d at p. 367.

■■ This Court finds that an ocular inspection of defendant's kiosks as they now appear would permit a finding of likelihood of confusion without further proof. This is based upon the yellow color of the roof and the presence of the words "Kodak film", and the use of the colors yellow, red and black.[6] Those features, however, might not cause confusion (as to that this Court need not now decide) if sufficient notice were given to the public that the retail outlet was in fact owned and operated by Fotomat Corporation.[7] To any person seeking to have films processed at one of defendant's kiosks, the single word "Fotomat" in front of the roof at the end of the kiosk might not indicate that the building constituted a place of business of Fotomat Corporation.[8]

Regardless of the foregoing, however, plaintiff has produced testimony from several witnesses on the witness stand to show actual confusion. Witness Schopp testifies he had "always been a customer of the Eastman Kodak Company, especially its processing services." that he deposited Kodachrome films at a "booth" with yellow roof bearing the words "Kodak film and Fotomat" believing it to be a "Kodak booth", and upon learning that he had been misled wrote to the Eastman Kodak Company as per a letter in evidence. He testified he was not asked whether he wanted Kodak processing, but that he "assumed it was Kodak processing" until later he learned to the contrary (Tr. 348) and stated "I now know that the Fotomats are not Kodak retail stores."

---

5. Both renderings submitted by plaintiff to defendant for consideration on May 13, 1966 and October 24, 1968 depicted a kiosk with an all yellow roof. Px. 232 and 263.

6. Defendant, of course, has a right to advertise the fact that it sells "Kodak film." Societe Anonyme du Filtre Chamberland Systeme Pasteur v. Consolidated Filters Co., 248 F. 358, 360–361 (S.D.N.Y. 1918) ; Carvel Farms Corp. v. Bartomeo, 50 Misc.2d 1073, 272 N.Y.S.2d 507 (Sup. Ct.1965). This would appear to be particularly true where, as here, defendant sells no other brand of film which requires separate processing and currently purchases approximately $500,000.00 of Kodak film per month for resale to its customers.

7. In a letter dated November 15, 1968, Martin Donahoe stated that "there is nothing wrong with using Kodak film on a yellow roof providing the building is clearly and prominently identified as a Fotomat operation." Dx. 191

8. It is possible that in the future Fotomat Corporation may be so well known in connection with photography that the word "Fotomat" will mean to the public an installation of that corporation just as the word "Ford" imports Ford cars and Ford Motor Company. This being a temporary injunction, relief must be granted on the basis of conditions as they now exist.

Witness Vernon A. Lee of Ft. Worth, Texas (Tr. 353) also adopted the contents of an affidavit made in the case and admitted in evidence concerning confusion.[9]

In like manner Witness L. Ambrus adopted the allegations of his affidavit which was introduced in evidence and gave additional testimony (Tr. 363), stating he was a part time professional photographer, that he had left films with defendant for processing thinking he was dealing with Kodak, that the film when returned to him was badly processed (Tr. 371). He testifies that when he went to the store he asked for Kodak processing.

Witness Mrs. Donna L. Middlemist (Tr. 380) of Redwood City, California, swore to the contents of her affidavit (Px. 64).

Witness Mrs. R. L. Elkins swore to the contents of her affidavit (Tr. 393, Px. 112).

On August 25, 1969, plaintiff filed a motion for summary judgment attaching thereto ninety-seven (97) affidavits which were admitted as evidence on the trial for temporary injunction. Many of these affiants testify that they were misled by the appearance of defendant's kiosks into the belief that they were operated by Eastman and in some instances (Often in response to leading questions) employees of the same stated to the affiants that the processing was done by Eastman.[10(a)] Failure of many attendants to so state negates any concerted and effective plan by defendant to induce them to do so.[10(b)] Some of these affiants were competitors of Fotomat and of course, the weight of each of these affidavits must be tested as to the possible bias or prejudice of the particular affiant. The affidavits served to show, however, that the plaintiff has available to it substantial testimony of confusion other than that shown by witnesses on the stand.

## DEFENSES

Defendant makes the following contentions:

(a) Plaintiff has no trademark on the colors yellow, red, or black, as used, and is not entitled to their exclusive use. Neither is plaintiff entitled to the exclusive use of its "print style";

(b) The color yellow is functional;

(c) Other Kodak dealers use the colors yellow, red and black with Kodak's trademark and service mark and sell products and processes other than those of plaintiff;

(d) Plaintiff had knowledge of, and acquiesced in, the "island" design of Fotomat two years prior to the filing of this suit, and defendant relied upon plaintiff's silence and expended money;

(e) Plaintiff encouraged and aided defendant at every step of its development;

(f) There is an implied license arising from the acquiescence and approval of defendant's use of colors red, yellow, and black;

(g) Plaintiff has allowed others to use its trademark and service marks, thereby causing confusion and misleading the public.

9. See Px. 57.

10(a). Defendant has in fact offered plaintiff's processing services through the use of prepaid mailers and currently does so on request by a customer. Dx. 94.

10(b). Plaintiff contends that Fotomat's telephone techniques instructed its Fotomates to follow the "general principle" of "identification with Eastman Kodak Company" and to represent that "we are located in the yellow Kodak building" in making telephone contacts with prospective customers (Answer to plaintiff's interrogatory No. 10); that one of defendant's agents misrepresented to a zoning or planning board that Fotomat Corporation was "a subsidiary, almost, of Eastman Kodak" and "we have their exclusive franchise for this operation and Kodak does not grant this to just anybody" (Plaintiff's exhibits 32, 77); and that defendant for a period of approximately thirteen months used substantially an exact duplicate of a print return envelope formerly used by plaintiff's processing laboratories (Plaintiff's exhibit 449).

(h) The color yellow is generic in the photographic field and means photography;

(i) Plaintiff, public, and media, misuse of Kodak causes that term to mean a film outlet and not an outlet used by Eastman;

(j) Plaintiff's threat of refusal to deal with defendant, and its action using its "monopoly power" violate anti-trust laws;

(k) Plaintiff's misuse, and the misuse of others with plaintiff's "assistance" have caused Kodak to become identified with the product;

(l) Plaintiff is guilty of unfair competition, has unclean hands, and is therefore barred from relief;

(m) Plaintiff does not use its purported trade dress in retail outlets in the film industry, and is not entitled to use of its purported trade dress to control such outlets.

Some of the foregoing constitute part of a denial of plaintiff's claims, including (a), (b), (h), and (m).

Other divisions relate to plaintiff's alleged conduct in furnishing misleading signs to dealers, to-wit, (c), (g), (k).

Other divisions relate to defendant's plea of estoppel or executed license against the plaintiff, including (d), (e), (f).

Others relate to alleged anti-trust violations by plaintiff, including (j) and (l).

The meaning of (i) is not clear to the Court. If it means that the trademark "KODAK" is taken by the public to refer to all cameras and films it would indicate only the public acceptance of that term as a valid trademark.

## PLAINTIFF'S RIGHT TO INJUNCTIVE RELIEF

■ Defendant, in a brief filed September 23, 1969 contends plaintiff is not entitled to injunctive relief under the equitable principle that a party who seeks equity must do equity. This principle has been stated as follows:

"That he who seeks equity must do equity is a cardinal principle of extensive application in equity; it is the invention of a court of chancery for regulating its own procedure." 30 C.J.S. Equity § 90, p. 983.

This has been termed as "one of the oldest and best settled and most familiar maxims in equity." It is applicable in every type of case, including unfair competition.

■ The respects in which defendant claims the above to be applicable in this case are as follows: That plaintiff has permitted other dealers to use plaintiff's trademark, trade dress, or each of them, in such a manner as to mislead the public. Plaintiff has cited cases to the effect that such permissive use by others is no defense to alleged infringement by the defendant. Defendant has also filed a brief as to third party usage. This Court rules, however, that plaintiff furnished only a small part of the dealer's signs complained of and has been making, and is still making, every effort to cause changes in the same by other dealers, and that defendant is not entitled to injunctive relief on that ground. Consequently, the foregoing will not constitute a ground for denial of injunctive relief to plaintiff.

Defendant's contention as to estoppel resulting in an executed license in favor of defendant is elsewhere discussed.

■ Neither does the Court find that plaintiff should be denied injunctive relief on account of the contentions by defendant of alleged confusion in the trade caused by the plaintiff in furnishing to dealers and independent processors envelopes and [contents thereof] inside bags to be delivered by the dealer or independent processor to customers [in regard to processing of film] with finished prints and negatives. These [supplies] envelopes complained of were purchased by dealers and independent processors [including the defendant itself] and used by them, and the dealer or independent processor had the opportunity if desired to imprint or stamp their own names on

the same. Plaintiff, however, has agreed to make changes in the aforesaid [supplies] envelopes and inside bags to suit the defendant's desires, and the Court is putting that in the form of an injunction. This issue had not arisen between the parties at the time plaintiff began making its objections to the trade dress of defendant's kiosks, the subject matter of this action.

## II. DEFENSE AS TO PLAINTIFF'S OTHER DEALERS INVOLVING THEIR SIGNS, ETC.

Defendant urges that plaintiff has over period of years allowed other dealers to operate places of business where films are taken for processing, and that such places of business are such as to mislead the public into the belief that they are operated by Eastman, as contended in the instant case by Eastman of the operations of Fotomat.

There are a large number of photographs of establishments by other dealers, as illustrated below:

Defendant's Exhibit 54 (A–H) of a kiosk at the top of which is a sign in red "foto-fair"[11] on a background of yellow. See Tr. p. 433. These kiosks located in Dayton, Ohio are shown from all sides at eight different angles and disclose a roof coming up to a point and going down to the eaves in the shape of an octagon. The strips of the roof are alternately yellow and red, the body of the building is yellow excepting the glass portion. Around the eaves and projected vertically from the same in black color are individual letters reading "Kodak film," "Cameras."

Defendant's Exhibit 25 shows a kiosk in Wichita, Kansas also having eight sides, the body of the same being painted yellow and each of the eight sections of the roof also being yellow. On four sides of the building standing upright from the eaves are individual letters red in color spelling the words "KODAK film." On red awnings extending downward from the eaves, red in color and with white lettering, are the words "one day photo developing," "flash bulbs," "one day photo finishing" and "film." At the lower portion of four of the side walls which are painted yellow there appears a sign, the top word being "discount" written in red, underneath there being the words and figure "one 1 day" in black, and beneath that in red "drive in film service" followed by small black lettering. From the photograph it does not appear that the name of the owner or operator of this kiosk is given. In that respect it differs from the kiosk just above referred to bearing the sign "foto-fair."

Defendant's Exhibit 5 shows [gives] five different views from different angles of a building in Pompano, Florida of apparently light buff color. On two sides of the building there appears in large letters red in color the single word "KODAK." At two places near the building, but not touching the same, there is a sign yellow in color with the word "KODAK" in red across the top, and underneath in black are the words and letters "color prints 17c." Nothing identifies the owner or operator of the building excepting the sign in red and yellow bearing the word "KODAK" and written underneath in black letters "camera counter". There was parked before the building a truck of yellow color bearing on one side in red the words "Direct Kodak" and across the rear in red the word "KODAK." Assuming that the words "camera counter" did not identify the owner and operator of the business, nothing else did, unless one would assume it was operated by Eastman. However, the word "Direct" might furnish a clue. As to defendant's Exhibit 5 see cross-examination of witness Robson (pages 441 to 444 inclusive).

---

11. Probability of confusion varies with the degree of certainty as to whether the language in question designates the name of the person or corporation on the one hand, or descriptive term on the other.

The expression "foto-fair" is perhaps on the borderline. In the instant case, as elsewhere pointed out, the word "FOTO-MAT" does not clearly designate the name of the operator of the kiosk in question.

Defendant's Exhibit 6 shows seven views of a dealer's place of business in Long Island, New York (see cross-examination of witness Robson beginning at page 444). On one window appeared a sign, background part in yellow, part in black, but lettering thereon in the same two colors advertising Kodak film including processing. In similar way on another window was a sign, background red, the words "quality processing" in blue, followed by the words in yellow "by KODAK." On another window on a background mostly in yellow were the words "color photo finishing service" in red and black, and at the bottom on a red background the words in black "Use Kodak Color Film." On the outside of the building there was lettering referring to Kodak film, cameras, etc., but no where the name of the owner or operator of the establishment. The witness testified as follows: "This sign here on (B) is a decal * * * plastered against the glass * * * it may be a real old sign, eight or ten years back" (Tr. 446). Witness Robson conceded that the language on one sign which says "processing, printing and enlarging" could be interpreted to mean that one would get Kodak processing at that building (Tr. 447). The witness also conceded that a poster or banner (Exhibit C) was manufactured by Kodak and it states "Quality Processing by Kodak." The following colloquy occurred:

"Q: Now if you saw that sign as you walked up, "Quality Processing by Kodak," would you believe you were going to get Kodak processing there?

"A: Yes. Yes, I could be misled perhaps, you get the impression that was going to be the case" (Tr. 449).

A similar sign with the same language appeared at another point on the building, perhaps in two other places.

Inside the building were boxes that hold the film envelopes which are yellow and red and black in color, same being "processing bags that people use to process the film." Witness referred to defendant's Exhibits 57 and 58 (see Tr. 451). The witness stated that he would know "that all of those many envelopes in there are not Kodak processing," but "the average person who walked up and sees Kodak film on this box in the window here * * * the average layman * * * would not know." (Tr. 452)

The witness stated that many of plaintiff's dealers "offer two services," same being services of an independent processor and also upon customer request furnish Kodak processing (Tr. 455). The witness also testified that plaintiff processes only about 8% of the color print film which it manufactures. (Tr. 506)

There are many other instances relied upon by defendant to show likelihood of confusion upon the part of the plaintiff causing the belief that Eastman is the owner and operator of these retail outlets and is the party processing the films at the same. These instances, however, equally illustrate confusion caused by the defendant itself by its own failure to definitely identify its own kiosks as being operated by Fotomat Corporation.[12]

## FUTURE PLANS OF PLAINTIFF REGARDING DEALERS' SIGNS

One week before the termination of the hearing of this matter plaintiff filed an affidavit of Wylie S. Robson, a leading Vice-President of Eastman Kodak Company, to which were attached photographs showing the type of outside store sign now being proposed for use by its

12. Twenty eight of such retail establishments are contained on defendant's Exhibit 19, a board containing pictures of dealers' places scattered over the United States. Some of these pictures disclose that the dealer is using the word "KO-DAK" and the Kodak colors, but is not advertising processing. Other dealers are expressly advertising "color processing by KODAK". In Exhibit 19(C), (P) and others, as in (H) there is an intimation that the developing is done by Kodak.

dealers (see Px. 401 for affidavit and pictures). These signs contain the name of the dealer in black letters on a white background with plaintiff's trade dress in miniature thereon. It is perhaps true as defendant insists that it would be preferable to have the name of the dealer above such emblem, or to the left of the same. No temporary injunction, however, need be granted as to the furnishing by the plaintiff to its dealers of outside signs as herein involved for several reasons. In a great many instances the plaintiff did not furnish the signs in question; in many other instances plaintiff has indicated that it has already induced the dealers to discard such signs and accept signs agreeable to the plaintiff; there is no possibility that plaintiff will in the future furnish any outside signs of the type to which defendant is now objecting, but on the other hand plaintiff has brought this suit to prevent the use of any such misleading signs, and is making substantial efforts to prevent the use of any such misleading signs, and is making substantial efforts to cause other dealers to discard the same, and with some success.

## DEFENDANT'S PLEA OF ESTOPPEL BY CONSENT

A substantial defense urged by defendant is based upon allegations that plaintiff, at the time of organization of Fotomat Corporation and the beginning of its establishment of its individual kiosks, consented to its use of the kiosks in question (same now being the subject matter of application in the United States Patent Office) together with defendant's use of the word "Fotomat" and various signs and colors.

The oral evidence, exhibits and arguments upon this phase of the case constitute a substantial part of the record. Many of the facts relating to the above consist of letters between the parties and the testimony by plaintiff's witness Martin Donahoe (Executive Staff Assistant for the Consumer Markets Division of the Eastman Kodak Company in charge of protecting plaintiff's trademarks) on the one hand, and Charlie Brown (originator and organizer of Fotomat Corporation) on the other.

Witness Brown operated a camera shop in Florida and attended a training school operated by Eastman in the year 1965, at which time he became familiar with Eastman's operations. He conceived the idea of establishing a photographic business consisting of huts or kiosks to be placed in shopping centers throughout the United States and embarked on this venture. Eastman declined to purchase his ideas and business but promised cooperation with his plans. [Subsequently Fotomat Corporation was formed with its principal office in La Jolla, California (with Clifford Graham as President and Brown as an officer).]

During these negotiations Donahoe and other employees of Eastman conferred with Brown and other members of his organization toward working out the marketing of the latter's goods and service (with particular reference to the changes in appearance of these kiosks). Many details were discussed by the parties. Thereafter, during these negotiations the business of Fotomat increased quite rapidly.[13] Subsequently Fotomat Corporation was formed with its principal office in La Jolla, California (with Clifford Graham as President and Brown as an officer).

On February 29, 1968 Donahoe wrote to President Graham of Fotomat Corporation a letter (Px. 249) expressing concern over "a pattern of customer confusion now that your Fotomat installations are increasing in Southern California." He also states "consumers who write us [Eastman] say they thought your operation was a Kodak operation." Donahoe expressed the view that the confusion was probably caused by the Fotomat pylon erected near the individual kiosks,[14] and stated "we think the overall effect you are creating is too much Kodak oriented." The writer referred to nego-

---

13. See Plaintiff's exhibit 146 showing dates of erection of Fotomat kiosks.

14. Donahoe testified that at the time he wrote Px. 249 plaintiff had received only one letter regarding confusion (Tr. 1509).

tiations with Charlie Brown back in May of 1966 where it was suggested Fotomat's company name be shown in colors other than yellow (blue and white was suggested), and stating "[W]e were trying to permit you to use a generous amount of the yellow color on the roof where Kodak film appears but were also suggesting that other color combinations should be used with your company name in order that posible confusion could be avoided."

Receiving no answer to the above Donahoe wrote to Graham again on April 2, 1968, and on April 29, 1968 received a wire from Graham apologizing for the delay in answering, and stating that "the problem of the Fotomat pylon not being in place and the Fotomat roof sign not being on the roof has now been corrected at all sites involved and the Fotomat name is now being prominently displayed on the roof so that there can be no confusion as to the name of the organization." [15]

By letter dated May 10, 1968 from Donahoe to Graham (Px. 252) the issue between the parties is clearly disclosed, the letter stating in part "[W]e are much concerned about the identity of your buildings as an independent Fotomat operation and not a directly related Kodak operation. Consequently the prominent use of the Fotomat name is of utmost importance * * * [I]t is our feeling that very possibly confusion may be caused by your use of Fotomat standing alone and in the presence of generous amounts of our distinctive trade dress colors." Two possible solutions were advanced by Donahoe. First, to use other colors than yellow, red, and black for the Fotomat pylon; [and] or second, by adding the abbreviation Corp., Inc., or even Co. to the pylon sign at the bottom of Fotomat thereon. [16]

When this hearing began plaintiff earnestly contended for solution #2, to-wit, adding the abbreviation "Corp." to defendant's sign, and this solution seemed to the Court to be the simplest and most effective solution to the problem. Defendant, however, introduced evidence to the effect that a sign bearing the words "Fotomat Corp." placed along the ridge of the roof would be structurally impracticable on account of the force of winds, and that any additional roof signing would violate many building codes, zoning ordinances, [regulations against the same by operators of parking areas] and shopping center rules, and plaintiff did not rebut such testimony, nor did plaintiff adhere to its insistence on such a sign, but on the trial seemed unable to make specific recommendations to the Court as to the proper remedy for plaintiff's problem. [17]

15. Px. 251.

16. Defendant contends the evidence shows: That throughout 1968, defendant continued to receive support from other divisions of plaintiff's company. Plaintiff's personnel assisted defendant in the training of Fotomates, Tr. 1574–76. Plaintiff wanted to run an article on defendant in the Kodak Dealer News, but did not do so at defendant's request. Tr. 1471. Plaintiff's salesmen and officials visited defendant's offices on an average of once a week and were "complimentary, cooperative and helpful." Dx. 415, pp. 2, 5. Plaintiff printed without objection, more than 6,000,000 film bags for defendant which bore an artist's rendering of defendant kiosk. Tr. 1484, 1577. On January 16, 1969, less than one month before this action was commenced, plaintiff praised defendant's television commercials which depicted its kiosks and wished defendant "the best of success in 1969." Dx. 117.

17. On the trial of the case the following colloquy occurred:
"PLAINTIFF'S COUNSEL: No sir, I think the hardest part of the case that you are going to have is what the remedy will be. In that regard, Your Honor, you honestly have my sympathy, because we haven't been able to work it out and I don't know how the Court is going to.
"THE COURT: Well, I don't need sympathy. I need help."
Plaintiff's difficulty perhaps lies in the fact that it hesitates in this case to recommend definite steps to be taken by defendant which might vary from requests it is now making with some success on some dealers, but of course, the circumstances are materially different.

The legal principles controlling the above plea of estoppel seem to be the following:

█ 1—Mere laches upon the part of the plaintiff in bringing an action to enjoin violations by defendant of plaintiff's trade dress do not constitute a bar to plaintiff's injunctive relief.[18]

█ 2—An express consent by plaintiff to the use by defendant of its building and appurtenances thereto (as signs, colors, etc.) upon which defendant acted and expended money, would prevent plaintiff from subsequently enjoining the same, at least until defendant had received full use of the things for which the expenditures were made, this being referred to as an executed license to the defendant. The above principles will be kept in mind by the Court as to assessing the costs of any changes which may be required by Order of this Court in this case.

### DEFENDANT'S CROSS-BILL

In addition to the defenses urged, as shown above, defendant's counsel on the hearing delivered to the Court a paper entitled "Proposed Limited Injunctive Relief Against Eastman Kodak", which has been filed of record. This has been summarized as shown below, and discloses defendant is seeking injunctive relief against plaintiff against the following acts:

1—Distribution to retail outlets in competition with defendant outside signs displaying trademarks of Eastman Kodak without identifying the ownership of the outlet.[19]

█ 2—Signs used by retail outlets containing such expressions as "Quality Processing by Kodak" cause probable confusion in the minds of the public. In the affidavit by Vice-President Robson (Px. 401) reference is made to "the latest Kodak Sales Promotion Catalogue". It appears that in lieu of the expression "Quality Color Processing by Kodak" plaintiff will in the future use such legends as these:

"Ask for Color Processing by Kodak"

"Quality Color Processing by Kodak on Request"

"We Feature Quality Color Processing by Kodak"

The affidavit refers to Exhibit V attached thereto which depicts "some of the selling aids we use to help the public to distinguish Kodak processing service from others." In Exhibit "B," however, there are many signs consisting of letters and words which tend to cause the confusion above referred to in that the phrase "Quality Processing by Kodak" is not modified as above, and plaintiff has agreed to refrain from furnishing the same unless so modified.[20] Neither should plaintiff hold out to the public that its processing refers to black and white pictures, as plaintiff only processes color pictures and movie films.

Grounds (3), (4), and (5) relate to distribution by defendant of retail outlet envelopes and paper sold by plaintiff bearing the watermark "A KODAK (R) PAPER" and alleged failure by plaintiff in its instruction sheets (stuffers) to indicate that plaintiff is not the owner of the retail outlet in question.[21]

18. Tisch Hotels, Inc. v. Atlanta Americana Motor Hotel Corp., 254 F.Supp. 743, 750 (N.D.Ga.1966); Menendez v. Holt, 128 U.S. 514, 523, 524, 9 S.Ct. 143, 32 L.Ed. 526 (1888).

19. No injunction is granted on this phase. See discussion of Robson's affidavit, page 313 hereof.

20. In view of the fact that (1) Defendant failed to request that plaintiff make these changes prior to demanding injunctive relief, in its cross bill, and (2) Plaintiff has represented that it is making such changes, no injunctive relief is warranted. The Plaintiff should have no objection to making these changes as it is the Plaintiff, not the Defendant or other photographic dealers, who lose business and goodwill if customers who desire Plaintiff's services are misled by such signs..

21. Defendant has introduced in evidence a large number of affidavits (said to be five thousand (5,000) in number) purporting to show actual confusion caused by acts of the plaintiff alleged in the cross-bill. Plaintiff has objected to admission of these affidavits in evidence be-

In substance, defendant's prayers (in addition to relief requested as to dealers' signs) seeks to enjoin plaintiff from distribution to dealers of envelopes, bags, instruction sheets and "KODAK paper" which defendant contends misled the public into the belief that processing done by independent processors (as employed by defendant) was actually done by Eastman.

### RETAIL OUTLET ENVELOPES

██ In the Robson affidavit (Px. 401) he explains there are two types of envelopes made available by plaintiff to film processors, one being attached and marked Ex. B–III, which at the top of the same shows a picture of a Kodak film box. This portion bears a number, also the name of the dealer, and it is perforated and torn off and given to the customer as his receipt. Nothing contained thereon leads the customer to believe that the processing will be done by Kodak. At the bottom in large letters is the name of the individual dealer (i. e. King Studio and Camera Shop). The court finds nothing misleading in this type of envelope, so long as it bears such an imprint.

Also used by plaintiff is a second envelope called a double-pocket envelope (also called a kangaroo envelope) which is only used inside the above work envelope. Heretofore this envelope has not been imprinted with the name of the individual dealer but plaintiff's affidavit states "we will insist that all of our envelopes of the double-pocket type, as well as the work type, either be imprinted by us with the dealer's name, or that we have a written representation from the dealer or processor that he will so imprint the envelopes." There is, however, one small envelope in which the

negative is placed, on the outside of which is contained a Kodak emblem, and that should not be used as it might indicate to a customer that the processing has been done by Kodak unless name of processor is imprinted thereon.

### WATERMARK "A KODAK (R) Paper."

██ Paper furnished and sold by Eastman to various dealers bears the watermark "A KODAK (R) Paper" in very faint, grey type and defendant contends it misleads the customer into believing that the print made thereon was made by Eastman. Eastman's trademark (KODAK) covers such paper and this Court finds that the other precautions herein provided for will prevent a customer from being misled by use of the watermark, and finds that Eastman is entitled to use of such watermark. Defendant's affidavits in support of this ground were filed too late to give Plaintiff an opportunity to rebut the same.

### USE OF INSTRUCTION SHEETS (STUFFERS)

Contents of these "film instruction sheets" are copied in full in the Robson affidavit (Px. 401) and expressly direct the customer to "return the exposed film to your dealer to be developed and printed by Kodak or another laboratory, or mail it direct in the appropriate prepaid processing mailer."

It also states "all Kodak products and services bear the name KODAK, or Eastman Kodak Company." [22]

██ Eastman objects to an order which would require it to print on these instruction sheets (or in connection therewith to state) that it does not operate any retail outlets, for the reason that it has in the past operated retail

---

cause they were offered at such a late stage of the trial without giving plaintiff opportunity to refute the same. However, no prejudice will result to the plaintiff as procedure complained of is either being changed by voluntary act of the plaintiff, or is not the basis for injunctive relief.

22. This instruction sheet is not used for KODACOLOR–X 126 film for use in Kodak Instamatic cameras but instructions for the latter are contained on the outside of the film box, stating in part "have processed promptly by Kodak or another laboratory."

outlets and may in the future desire so to operate. The Court does not find such addition to the instruction sheet to be necessary as the language on the same is not such as to mislead a customer.

## OTHER PRAYERS BY DEFENDANT

There are other prayers by defendant for affirmative relief which were not insisted upon by counsel, or which, even if insisted upon, do not authorize injunctive relief. These consist of alleged violation by plaintiff of antitrust acts, injunction against plaintiff from filing suits against third parties, or for defamation of the defendant, with prayers that plaintiff be compelled to divest itself of certain manufacturing facilities, etc., and enjoined from direct mail processing and required to devote ten (10) per cent of its advertising budget to inform the public it is not in the retail business, and enjoined from alleged interference by plaintiff with relationships between defendant and its franchisees. At the Court's direction, defendant did not press its allegations with respect to anti-trust violations and those allegations will remain open for determination at a final hearing.

## PLAINTIFF'S REMEDIES AS PLEADED

Plaintiff requests that defendant be enjoined from:

(a) Using trade dress which is any way similar to plaintiff's and particularly predominantly yellow background with red or black lettering in the photographic field;

(b) Using plaintiff's marks in any manner likely to cause confusion;

(c) Claiming proprietary right in the photographic field and in plaintiff's trade dress;

(d) Misrepresenting its affiliation with plaintiff;

(e) Failing to identify fully its corporate name in large letters;

(f) Misrepresenting the source of origin of its processes;

(g) Using plaintiff's trademark in connection with the sale of products and other processes other than plaintiff's.

The above remedies are in general terms. Specific remedies are discussed infra.

## PLAINTIFF'S REMEDIES—NEGOTIATIONS BETWEEN PARTIES

The Court derives more enlightenment on the matter of plaintiff's proposed remedies from negotiations between the parties prior to the filing of the suit and extending from [July 28, 1966] May 10, 1966 to February 4, 1969 (eight days before suit was filed). A synopsis of the correspondence between the parties, giving the exhibit number of the letter, its date and a short reference to the contents follows herewith, and in some instances, a comment by this Court in regard to the same.

On July 28, 1966 letter from Eastman to Charlie Brown requested that careful attention be given by the latter to the use of yellow color to prevent the possibility of confusion (the first Fotomat unit was opened in Florida in November, 1966 as shown by Px. 433 and in California in April, 1967, as shown by Px. 235). There were alleged to be six (6) units in California in April, 1967 and eleven (11) units in Florida, Px. 236).

After further exchange of correspondence defendant's Vice-President Lee wrote plaintiff that defendant will build three hundrd (300) units that year in California (Px. 247, January 26, 1968). On February 29, 1968 Donahoe wrote to Graham that the pylon may be causing confusion and suggested the use of yellow be held down to avoid confusion. At this time there were allegedly 26 kiosks in operation.

On April 29, 1968 Graham wired Donahoe (Px. 251) advising among other things that a Fotomat sign will be on the roof, but made no reference to the word Corporation on such sign.

Letter from Donahoe to Graham of May 10, 1968 (Px. 252) is rather significant, the writer expressing the opinion

of possible confusion to be caused by "Fotomat" standing alone with plaintiff's trade dress and suggesting that defendant use colors other than yellow, red and black for the pylons (use of which was soon abandoned) or to add "Corp., Inc. or Co." to the pylons to establish separate identification. At this point there were allegedly approximately 41 kiosks in operation. Again, in letter of June 27, 1968 (Px. 258) Donahoe repeats his desire that the word Corporation, etc. be added to the signs, and by letter of August 20, 1968 (Px. 259) requests defendant to separate the Fotomat and Kodak identities. Letter from Graham to Donahoe of September 9, 1968 (Px. 260) is significant. The writer, referring to the above letters of May 10 and June 27, stated that, although design changes "require a great deal of time and planning in order to completely implement them," that steps are being taken to eliminate objections "raised by you." Continuing the letter stated "in connection with the signs located on the building, all new buildings being erected now have the word 'Fotomat' in bold, block letters on the front and rear edges of the roof and the words 'Fotomat Corporation' appearing in bold red letters on the building sides. The older buildings will be revised to conform to these changes over a period of time."

Where the letter referred to the word "Fotomat" as being "on the front and rear edges of the roof" (as now being used) it referred to the ends of the kiosks. Where it made reference to the words "Fotomat Corporation" (as appearing in bold and red letters on the building sides) the writer evidently had reference to Defendant's Exhibit 113 (sometimes known as the "tombstone sign", which was subsequently discarded and replaced by Dx. 114).

On October 2, 1968 Donahoe wrote to Graham (Px. 261) stating that he appreciated the latter adding the Fotomat signs, but suggested that a rendering would be helpful and asking if the Fotomat identification could be seen from all sides, and whether defendant could put a "Fotomat Corporation" sign on the roof peak. On October 24, 1968 Donahoe again wrote to Graham (Px. 262) sending to him a rendering (Px. 263) showing how the signs might be used, stating that evidence of confusion continues to mount, that "Kodak" in red on a yellow background is a major factor in confusion, and stating "we strongly urge you to develop signs which will give greater prominence and distinctiveness to your name." (NOTE: It is difficult for this Court to understand, in light of all of the foregoing emphasis by plaintiff of its desire for a sign clearly stating "Fotomat Corporation" why plaintiff's counsel at the conclusion of the hearing did not expressly urge such relief, and intimated plaintiff would as an alternative be agreeable to defendant's eliminating the word "Kodak" on the roof. Assuming that plaintiff as owner of the trademark "Kodak" has the legal right to prohibit its use on defendant's roof it might be obligated to give the same treatment to all other dealers, if said dealers were found to be misleading the public. While this Court in its view doubts very much that plaintiff would wish to lose the advertising value of the expression "Kodak film" on the places of business of its dealers, plaintiff has advised the Court that it would prefer that the words "Kodak film" be removed rather than be the subject of misuse or cause likelihood of confusion. Defendant's long use of the term "Kodak film" raises serious doubt as to plaintiff's right now to prevent its continued use—but here again, the question was not raised by the plaintiff until the last few moments of the hearing and was not explored.

In the last letter written by Plaintiff to defendant (Px. 265, February 4, 1969) Vice-President and General Counsel Brereton called attention to the fact that Fotomat was bringing legal actions to establish its right in Kodak's trade dress, the thing which he stated plaintiff could not permit. Eight days later this suit was filed.

## REMEDY TO BE GRANTED TO PLAINTIFF

The Order entered by this Court on October 3, 1969 indicating to the parties the type of relief which the Court should give to the plaintiff in the event plaintiff recovered, is vacated and set aside.

The Order which will be entered in this case is intended as temporary relief only and therefore should be one which should, as near as practicable, give the plaintiff adequate protection at minimum expense.

Furthermore, conditions existing at the time the changes now made will be put into effect may be different when a final decree is entered, that depending in part upon the effect on the public of the implementation of the remedies now provided.

It is true that the changes as suggested by defendant prior to the Court's Order of October 3, 1969 were made without prejudice (see Dx. 119(A)), but the Court assumes they would not have been proposed by defendant unless satisfactory to it.

The Court, therefore directs the plaintiff to prepare, submit to defense counsel, and file with the Court an Order and Judgment to the following effect:

(1) Adopting the rendering represented by Defendant's Exhibit 119(A), but with the following changes:

(a) Remove the awning under the sign "Fotomat" at the end of the kiosk and in lieu of the language "One Day Photo Service" have printed on the sign the word "Corporation", and (b) in addition thereto imprint on the concrete form as shown in Defendant's Exhibit 119(D) the words

(R)

## "FOTOMAT IS A SERVICE MARK OF FOTOMAT CORPORATION",

and that the same not be allowed to be obscured by shrubbery, etc.; (c) attach to the building at eye level to a customer in an automobile, and under the said awning a sign reading as follows:

"Operated by FOTOMAT CORPORATION"

or

"Franchised by FOTOMAT CORPORATION"

to be attached at each end of the kiosk, which would be appropriate whether the kiosk is operated by the defendant or one of its franchisees. The letters contained in

"FOTOMAT CORPORATION"

shall be not less than three (3) inches in height, and the proposed sign shall be prepared by defendant and exhibited to plaintiff's counsel, and if any objections are made to be submitted to the Court.

(d) At this time defendant maintains at night a light shining on the sides of the kiosks upon the words "Kodak film". Defendant is restrained from continuing that unless and until there is an equal light shining upon the words and letters "Fotomat Corporation" contained on the roof sign and awning beneath the same at the ends of the kiosks.

(e) In all kiosks from and after this date, and until further Order of the Court, when the sign "Fotomat" shall be erected at the end or ends of the same (as now erected) there shall be contained on such signs under the word "Fotomat" the letters "Corpn." of the same size and type as the word "Fotomat", and this shall be in lieu of all the other requirements herein made by this Order concerning the ends of the kiosks, to-wit, the awning, the eye-level signs, and the lettering on the islands.

The foregoing provision is made for the following reasons: (1) The present "Fotomat" signs that have already been erected may remain until and unless subsequently modified by permanent injunction, and (2) should kiosks hereafter erected be made subject to the provisions of this Order a great deal of unnecessary expense would be incurred if on a final hearing the Court finds other remedies to be more appropriate.

The other elements in Defendant's Exhibit 119(A) shall remain the same, to-wit:

1—Change Fotomat on the roof from red to blue;

2—Reduce the size of Kodak film on the roof from fourteen (14) inches to eleven (11) inches;

4—Insert eight (8) inches by twelve (12) inches cards in windows at each side of the building, as shown, and install wall sign as per Defendant's Exhibit 114 to the right of the windows on each side of the kiosk.

This Court is not now, by way of temporary relief, ordering defendant by way of partial relief, to add to its present sign (Fotomat) at the end of the building the additional letters on said sign, to-wit, "Corp." or "Corpn." in lieu of some of the other remedies granted plaintiff. Such relief would be more appropriate for an order on permanent than on temporary injunction, and would entail more expense than the remedies above accorded to plaintiff.[23]

Defendant is ordered immediately to proceed to make the changes hereinabove directed and to report to the plaintiff on the first day of each month beginning February, 1970 the progress being made therein.

The changes aforesaid shall be contracted for and performed by the defendant, but the cost thereof shall be divided equally between the parties, and to that end Defendant shall prior to contracting for the same advise Plaintiff of the proposed costs, giving Plaintiff at least ten (10) days opportunity to object to the same.

Should Plaintiff consider any of the remedies above provided to the Plaintiff to be unnecessary for Plaintiff's protection it shall immediately give notice thereof to the Court and the same will be stricken.

## REMEDIES TO DEFENDANT ON ITS CROSS-BILL

As hereinabove indicated the Court agrees with Defendant that probable confusion arises or will arise from certain practices of Plaintiff, but declaratory relief only in most instances will be necessary for Defendant's protection for the reasons: (1) Complaint was not made by defendant to plaintiff prior to trial, and (2) it appears plaintiff is now taking steps to rectify such usages. The above refers to the nature of signs furnished by the plaintiff to its dealers, and it also applies to envelopes and contents thereof furnished by plaintiff to its dealers in connection with processing of films.

Temporary injunction will be granted against plaintiff only in regard to the placing of plaintiff's name or trademark on the envelopes furnished by plaintiff to dealers for the containment of films re-delivered to the customer after processing; plaintiff's name or trademark should not be contained thereon (which might indicate plaintiff did the processing) unless there is imprinted on the same the name of the actual processor (when plaintiff itself did not process the same).

Order of the Court pursuant to the foregoing shall be entered by the Court.

---

23. This Court considered, as proper remedy to the plaintiff, requiring defendant to add to the sign bearing the word "Fotomat" now appearing at the end of its kiosks the further letters "Corpn." in the same manner that the word "Fotomat" appears thereon. The letter from the Court was evidently misunderstood by plaintiff, which prepared slots in the roof itself in which letters were inserted spelling out "Fotomat Corp.". When this was tendered in evidence on the trial, the same being some distance from the bench, the Court rejected its admission thinking the said letters were printed on the roof itself. In writing said letter the Court contemplated that "Corp." would appear underneath the word "Fotomat" and be attached to upright brackets.

### AMENDMENT TO ORDER OF THE COURT OF DECEMBER 31, 1969

On motion by plaintiff the Court adds to the Findings of Fact contained in the aforesaid order the following:

Plaintiff, through its use over a period of more than fifty (50) years, has established a fanciful and unique trade dress, consisting of a predominantly yellow background used in combination with the colors red or black, or both, sometimes accompanied by limited amounts of an accent color, together with plaintiff's various valid trademarks (e. g. KODAK, KODACOLOR, KODACHROME, EKTACHROME) and service marks appearing in a distinctive style of printing, all of which has long been associated in the photographic field with plaintiff alone, along with its products and services, and said trade dress is of great value to Eastman Kodak Company.

The defendant's retail film and photofinishing outlets, sometimes known as kiosks, as they now appear, are not adequately identified as owned or franchised by defendant, and this together with the use by defendant of a trade dress thereon similar to that of plaintiff, has resulted in likelihood of public confusion, as well as actual public confusion, both as to the ownership and/or sponsorship of defendant's kiosks and as to the source or origin of the products and processing services merchandised therein.

### ORDER OF COURT ON PRAYERS BY PLAINTIFF AND DEFENDANT FOR TEMPORARY INJUNCTION

### STATEMENT OF THE CASE

This Court entered an Order on December 31, 1969 (containing forty-six pages) in which the Court attempted to give Findings of Fact and Conclusions of Law, and outlining the remedy which would be given both the plaintiff and defendant on their prayers for temporary and permanent injunction.

Since that date many objections and suggestions have been filed by counsel for each party extending up to this time.

The matter was set down for additional hearing on March 10, 1970 at which evidence was not heard, but discussions and arguments of counsel (see Tr. pp. 1972–3002 inclusive).

The Court announced tentatively the type of injunctive orders that counsel should present to the Court (Tr. 2073–3002) and heard comments and arguments of counsel for each side.

Counsel for each party have filed proposed forms for such requested orders, requests for additional findings of fact and objections to many statements made by the Court regarding the tentative orders, even relating to the punctuation thereof.

To avoid much repetition and additions to an already voluminous record this Court is complying with many of the requests of counsel by filing amendments to the Order of this Court of [October] 31, 1969, but is entering injunctive orders in a separate document and without a repetition (as requested by some counsel) of other parts of the record, including discussion of facts by the Court, discussion of law by the Court, and other matters.

### RESTRAINING ORDERS AGAINST DEFENDANT

1. This Court having found that the defendant has erected and is in the process of continuing to erect and operate places of business known as kiosks in such a manner as to cause confusion upon the part of the public that said kiosks are operated by the plaintiff thereby causing a part of the public to believe that processing of kodak film at such kiosks is being done by plaintiff, said defendant is hereby preliminarily restrained and enjoined to continue the operation of such kiosks now in operation or to be in operation by said defendant until and unless said defendant shall have taken the following steps to remove such confusion, to-wit:

(a) Defendant's Exhibit 119(A) showing the changes it would voluntarily adopt without prejudice to its position at final hearing, is hereby adopted as the

order of this Court and the defendant shall alter its kiosks accordingly but with the following changes:

(i) Defendant shall imprint on either end of the concrete forms or planters at the ends of the kiosks, as it offered to do in defendant's Exhibit 119(D) the words

### (R)
### FOTOMAT IS A SERVICE MARK OF FOTOMAT CORPORATION

(ii) Defendant shall attach to the ends of the kiosks at eye level to a customer in an automobile a sign reading as follows:

"Operated by FOTOMAT CORPORATION"

or, as the case may be

"Franchised by FOTOMAT CORPORATION",

one of which signs will be appropriate whether the kiosk is operated by the defendant or one of its franchisees. The letters contained in "FOTOMAT CORPORATION" shall be not less than three (3) inches in height.

(b) The other elements in defendant's Exhibit 119(A) herein ordered to be performed by defendant shall remain the same as it has offered, to-wit:

(i) The word "Fotomat" on the roofs of the kiosks shall be changed from red to blue;

(ii) The size of "Kodak film" on the roofs of the kiosks shall be reduced from fourteen (14) inches to eleven (11) inches;

(iii) The awnings on the sides of the kiosks shall be blue with red letters showing the legend "Fotomat Corporation Developing" on the sides of the kiosks;

(iv) A card, 8″ by 12″, shall be inserted in the windows on each side of the kiosks bearing the legend showing in defendant's Exhibit 94, explaining the source of the film processing obtainable through Fotomat Corporation;

(v) Wall signs as per defendant's Exhibit 114, shall be hung beside the windows on the sides of the kiosks. (Both defendant's Exhibits 94 and 114 [the tombstone sign] were referred to in defendant's Exhibit 119(A).)

2. Any of the foregoing which are not desired by the plaintiff shall be so signified by the plaintiff within fifteen days from the date of this Order and as to those changes not desired, plaintiff shall not bear any share of the costs thereof if defendant determines nonetheless to proceed with the same.

3. As to all kiosks erected by defendant prior to the filing of this suit cost of all changes ordered by the Court shall be borne equally by the parties. As to costs of all changes required by the Court in all kiosks erected between the date of the filing of the suit and the date of this order costs shall temporarily be divided equally between the parties, subject to further order of this Court to be made in the judgment on permanent injunction, or prior thereto.

All matters directed by this Court to be done by defendant in regard to said kiosks from and after the date of this order shall be paid by defendant without liability upon the part of plaintiff for the same.

Defendant before contracting for or becoming liable for expense of any changes required herein shall give notice to plaintiff (as required in Paragraph 1 (p. 324) hereof) of proposed changes and the cost of the same. If plaintiff has any objections as to nature or cost of such changes it shall give notice of the same to defendant (as required in Paragraph 1 (Page 324) hereof) as soon as practicable (but within not more than thirty days from date of mailing of defendant's notice). If parties can not agree thereon they may apply to this Court for a ruling.

4. Plaintiff has made objection to the operation by defendant of lights which are caused to shine upon the words "Kodak Films" on the roofs of defendant's kiosks unless such lights also play upon the word "Fotomat" at the end of the kiosk. This prayer by plaintiff is hereby referred to the Special Master, Robert E. Price, Esquire to try the issue

by live testimony or additional affidavits and make recommendation to this Court as soon as practicable. However, any delay caused by this issue shall not delay compliance by either party to this case with the steps directed by this Court herein towards removal of confusion.

5. This Court is not at this time granting any temporary injunction on prayers by plaintiff that defendant be required to erect at the end of the kiosks under the sign "Fotomat" the additional abbreviation "CORP", but this issue is also referred to the Special Master to try the same by live testimony and/or affidavits and report to the Court under provision just above stated that it shall not delay execution of any other remedies. In this connection the Special Master shall consider any offers made or to be made by defendant to place inside glass at one end of the kiosks a container in which is installed an electric fixture, the light from which shall shine toward the outside through the glass, bearing the words as hereinabove provided for eye-level signs, together with similar container at the outside of the other (the closed end) of the kiosk.

The Special Master shall also consider should these two electric signs in each kiosk be adopted, as to what effect if any it will have upon other requirements made herein by the Court with particular reference to the necessity of considering addition of the letters "CORP" on the roof below the word "Fotomat".[1]

## DEFENDANT'S REMEDIES AGAINST PLAINTIFF

6. In the Court's order of December 31, 1969 at page 31, et seq., there are findings of fact concerning the furnishing by plaintiff to its dealers of signs containing the language "Quality Processing by Kodak", the Court having found that such signs without more probably confuse the public in the belief that films left for processing at such places will be processed by Eastman Kodak Company, and not by an independent processor. Such signs shall read as follows: "Ask for Quality Color Processing by Kodak" or "Quality Color Processing by Kodak on Request", or such other language as may be agreed upon by the parties to this case in writing, with a copy of the same sent to this Court.

7. Plaintiff shall not sell or offer for sale, distribute or assist in the sale or distribution of any film bags, print envelopes or negative envelopes on which plaintiff's products and services are advertised, unless plaintiff prominently prints or stamps on the same the name of the dealer or processor other than plaintiff using the same, or arranging with said dealer or processor to print or stamp said name thereon.

## ORDER AS TO BOTH PARTIES

(1) All correspondence or notices of any kind required in this order to be sent or furnished by defendant to plaintiff shall be sent by registered or certified mail addressed to David Hoffberg, Esq., Nixon, Hargrave, Devans & Doyle, 1 Exchange Street, Rochester, New York 14614 and to Daniel B. Hodgson, Esq., Alston, Miller & Gaines, C & S National Bank Building, Atlanta, Georgia 30303. All of the same sent to defendant shall in like manner be sent to Gary Wiles, Esq., 920 Kline Street, La Jolla, California 92307 and to Thomas C. Shelton, Esq., 1045 Hurt Building, Atlanta, Georgia 30303.

(2) Temporary injunctions granted to each party are conditioned upon the filing by each party of a bond in a form approved by this Court and with security approved by the Clerk in terms of the law in the sum of One Hundred Thousand ($100,000.00) Dollars to cover such damages as obligee in the bond may sustain by virtue of temporary injunction if it should appear the same was improvidently granted. Said bonds shall also protect the obligee therein for any obligation or

---

1. The above order is in lieu of any previous order this Court might have entered regarding such roof sign and container on page 28 of the order of this Court of December 31, 1969.

expense incurred in making changes as herein required or hereafter required which should have been made (in part or in full) at the expense of the other party.

### SUPPLEMENTAL ORDER

Counsel for defendant has filed written objections to the order of this court of September 1, 1970 allowing to be filed in this court on April 6, 1970 a motion by plaintiff, the court having stated "said motion shall be filed with the record to assist in the interpretation of the Findings of Fact and Conclusions of Law contained in the record." The court did state in said order of September 1, 1970, however, that "the allegations in Grounds One to Six of the motion" were correct.

Defense counsel on September 11, 1970 filed a motion to strike from the court's order of March 26, 1970 certain language indicating that "plaintiff through its use over a period of more than fifty years has established a fanciful and unique trade dress consisting of a predominantly yellow background," etc.

This court wishes to emphasize that none of the foregoing constitute findings of fact by this court on the merits of the case as the court can not do that on a hearing for temporary injunction.

Defense counsel insists that plaintiff desires to use alleged findings of fact made by the court in this hearing in connection with "nine various actions or proceedings against Fotomat in other parts of the country." Of course, no so-called "findings of fact" in the instant case concerning temporary injunction can be considered as an adjudication of such facts. This principle of law is so elementary that citation of authorities should not be necessary, but a few will be given.

In Doeskin Products v. United Paper Company, 195 F.2d 356 (7 Cir. 1952) the Seventh Circuit (citing other cases) said:

"When a motion for preliminary injunction is presented to a court *in advance of hearing on the merits*, it is called upon to exercise its discretion

upon the basis of a series of estimates" (emphasis supplied)

including among other things,

"The probability of the ultimate success or failure of the suit, the balancing of damage and convenience generally."

However, temporary injunction may be granted,

"[W]here it appears that there is a substantial controversy between the parties and that one of them is committing an act or threatening the immediate commission of an act that will cause irreparable injury or destroy the status quo of the controversy before a full hearing can be had on the merits of the case." Missouri-Kansas-Texas R. Co. v. Randolph, 182 F.2d 996 (8 Cir. 1950).

It has further been stated:

"The judge's legal conclusions, like his fact-findings, are subject to change after a full hearing and the opportunity for more mature deliberation. For a preliminary injunction—as indicated by the numerous more or less synonymous adjectives used to label it—is, by its very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive." Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738 (2 Cir. 1953), at p. 742.

Indeed in the case of B. W. Photo Utilities v. Republic Holding Corporation, 280 F.2d 806 (9 Cir. 1960) the court stated (at p. 807):

"It is not the function of a preliminary injunction to decide the case on the merits, and the possibility that the party obtaining a preliminary injunction may not win on the merits at the trial is not determinative of the propriety or validity of the trial court's granting the preliminary injunction."

This court has never read, seen or heard of a temporary injunction hearing bearing any similarity to that involved in the instant case wherein both parties have attempted to try the merits of the case in as plenary a manner as could be

conceived, as a casual inspection of the record and documents will disclose.

This court, noting the above trend and wishing to avoid two complete trials of the case, passed an order combining the prayers of the temporary injunction with the prayers of the permanent injunction, and only a trial of the latter will disclose what has actually been proven, but this court has attempted to quote much evidence and cite many cases tending to support the court's order on temporary injunction. Such alleged findings, however, are not adjudications on the facts or the law, except to the extent they might tend to support a temporary injunction granted. The plaintiff is praying for additional remedies which are not now granted. As said by another court:

> "To have granted all plaintiff asked would have decided this case upon the merits. Such is not the function of a preliminary injunction." See Westinghouse Electric Corporation v. Free Sewing Machine Co., 256 F.2d 806 (7 Cir. 1958).

Deeming the above a sufficient answer this court is denying all motions to amend its findings of fact and conclusions of law.